IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| YOUNIQUE, L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MARK M. YOUSSEF,<br><br>Defendant. | **MEMORANDUM DECISION ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>Case No. 2:15-cv-00783-JNP-DBP<br><br>District Court Judge Jill N. Parrish |

Before the court is Defendant Mark M. Youssef's Motion to Dismiss for Lack of Jurisdiction filed March 28, 2016. (Docket No. 31). As discussed below, the court concludes that it may not properly exercise personal jurisdiction over Dr. Youssef here, but grants leave for Younique to submit a request for transfer before the court dismisses the case.

## BACKGROUND

This action arises from a trademark dispute between Plaintiff Younique, L.L.C., a cosmetics company headquartered in Lehi, Utah, and Defendant Mark M. Youssef, a medical doctor who owns and operates the YOUnique Cosmetic Surgery Center in Santa Monica, California. In 2012, Younique allegedly began selling a variety of cosmetics, skincare, and beauty products under the "YOUNIQUE PRODUCTS" brand. (Docket No. 2, ¶ 13). Younique registered a federal trademark for the "YOUNIQUE PRODUCTS" brand name in 2014 (Reg. No. 4,504,512), and an associated logo in 2015 (Reg. No. 4,821,584). Dr. Youssef alleges his practice has provided surgical and non-surgical cosmetic treatments under the "YOUNIQUE" mark since 2005. Dr. Youssef also alleges he has sold certain "medicated and non-medicated cosmetics" under the "YOUNIQUE" mark since 2006. (Docket No. 31, at 3–4). Dr. Youssef

registered a federal service mark for "YOUNIQUE" in 2008 (Reg. No. 3,543,530). Thus, both Younique and Dr. Youssef lay claim to some form of a "Younique" mark.

Late in 2014, Dr. Youssef filed an application for a trademark on the "YOUNIQUE" mark in order to further his sales of cosmetic products. His application was denied when the U.S. Patent and Trademark Office determined that his "YOUNIQUE" mark was likely to cause confusion with Younique's sales of cosmetics under the preexisting "YOUNIQUE PRODUCTS" trademark. In response, Dr. Youssef sent a cease-and-desist letter to Younique in Lehi, Utah, alleging infringement of his service mark and threatening litigation. Shortly thereafter, in August of 2015, Dr. Youssef filed a petition to cancel Younique's trademark and supplant it with his own application, arguing that he was the first to use the mark. That petition is pending before the U.S. Trademark Trial and Appeals Board ("TTAB").

In response to Dr. Youssef's letter and petition to the TTAB, Younique filed this action for declaratory relief in the District of Utah under the Federal Declaratory Judgments Act. *See* 28 U.S.C. §§ 2201, 2202. Younique seeks a declaration that its use of the "YOUNIQUE PRODUCTS" trademark does not infringe on or dilute any rights Dr. Youssef may have in his service mark or pending trademark under federal and state law, and that its use of the "YOUNIQUE PRODUCTS" trademark does not constitute unfair competition, deceptive trade practice, or other tortious activity under federal or state law. Younique also seeks an order dismissing Dr. Youssef's petition, which is currently pending at the TTAB, and an injunction against any further action by Dr. Youssef to challenge Younique's trademark registration.  (*See* Docket No. 2, ¶¶ 25–37).

On March 28, 2016, Dr. Youssef filed the instant Motion to Dismiss for Lack of Personal Jurisdiction. (Docket No. 31). Dr. Youssef argues that he does not have the required "minimum

2

contacts" with this forum to create general or specific personal jurisdiction, that any contacts he has with this forum are unrelated to Younique's claim, and, finally that any exercise of personal jurisdiction would not be reasonable or fair under due process principles. Younique timely filed a Memorandum in Opposition on August 10, 2016. (Docket No. 40). Dr. Youssef timely filed an appropriate reply on August 24, 2016. (Docket No. 43). Oral argument was held before the court on September 20, 2016. The court now considers the arguments of the parties on this matter under jurisdiction granted by 28 U.S.C. § 2201.

## DISCUSSION

As described above, the motion at hand contests this court's exercise of personal jurisdiction over Dr. Youssef. "[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, no evidentiary hearing has been held and the motion for personal jurisdiction is based on affidavits and other preliminary materials, the plaintiff "need only make a *prima facie* showing of personal jurisdiction." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (citing *Wenz*, 55 F.3d at 1505). Moreover, any factual disputes must be resolved in favor of the plaintiff. *Id.*

Having established the parameters of the burden on Younique, the court now turns to the substance of Dr. Youssef's motion. As discussed above, Dr. Youssef challenges this court's exercise of personal jurisdiction over him as a non-resident of this forum. When determining the extent of its own personal jurisdiction over a non-resident defendant, the court "begins [its analysis] with two questions." *See id*. The first question asks whether the exercise of personal jurisdiction by this court aligns with the applicable jurisdictional statute. The second question asks whether the exercise of personal jurisdiction by this court comports with principles of

constitutional due process. *See Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006). As to

the first question, neither the Lanham Act, 15 U.S.C. § 1051 *et seq.*, nor the Declaratory

Judgment Act, 28 U.S.C. § 2201 *et seq.*, provide for nationwide service of process. *See Capitol*

*Fed. Sav. Bank v. E. Bank Corp.*, 493 F. Supp. 2d 1150, 1158 (D. Kan. 2007) (Lanham Act);

*Dudnikov*, 514 F.3d at 1070 (Declaratory Judgments Act). Thus, the applicable jurisdictional

statute is Utah's long-arm statute, *see* Fed. R. Civ. P. 4(k)(1)(A), which "authorizes jurisdiction to

the full extent of the federal constitution." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d

1153, 1159 (10th Cir. 2010); *see also* Utah Code Ann. § 78B-3-201(3); *Starways, Inc. v. Curry*,

980 P.2d 204, 206 (Utah 1999). Because the applicable long-arm statute and due process are co-

extensive in this case, "the first, statutory, inquiry effectively collapses into the second,

constitutional, analysis." *Dudnikov*, 514 F.3d at 1070. As a result, this court need not conduct a

separate statutory inquiry, *Emp'rs Mut.*, 618 F.3d at 1159, but will instead focus its personal

jurisdiction analysis on the requirements of due process.

As noted above, Younique must satisfy this court that the exercise of personal jurisdiction

over Dr. Youssef comports with due process. "The Supreme Court has held that, to exercise

jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the

forum state, such that having to defend a lawsuit there would not 'offend traditional notions of

fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945)). Personal jurisdiction over a non-resident

defendant may take either general or specific form. *See Helicopteros Nacionales de Colombia,*

*S.A. v. Hall*, 466 U.S. 408, 414 nn.8, 9, 104 S.Ct. 1868 (1984). General personal jurisdiction

arises from a non-resident defendant's "continuous and systematic" contact with the forum.

*Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014) (internal quotations omitted) (quoting

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846 (2011)).

Such pervasive contact subjects a non-resident defendant to any claim arising in the forum

because he is "essentially at home" there. *Id.* (quoting *Goodyear*, 564 U.S. at 919); *Shrader v.*

*Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (explaining that general jurisdiction subjects a

non-resident defendant to the court's jurisdiction "for any lawsuit"). Where a non-resident

defendant does not have sufficient contact with the forum to be considered "essentially at home"

there, a court may nonetheless exercise specific personal jurisdiction over him in claims that

arise out of, or are specific to, his contact with the forum. *See Walden v. Fiore*, 134 S.Ct. 1115,

1121 n.6 (2014); *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1280 (10th Cir. 2016).

Here, Younique argues that Dr. Youssef has "minimum contacts" with Utah sufficient to

permit the exercise of specific personal jurisdiction.[1] As noted above, a court may not exercise

personal jurisdiction over a non-resident defendant unless he has "minimum contacts with the

forum state, such that having to defend a lawsuit there would not offend traditional notions of

fair play and substantial justice." *Dudnikov*, 514 F.3d at 1070 (internal quotations omitted).  In

the context of specific personal jurisdiction, the "minimum contacts" inquiry "depends 'on the

relationship among the defendant, the forum, and the litigation[.]'" *See Anzures*, 819 F.3d at 1280

(quoting *Walden*, 134 S. Ct. at 1121). More precisely, in evaluating whether the exercise of

specific personal jurisdiction comports with due process, courts make three inquiries: "(1)

whether the defendant purposefully directed its activities at residents of the forum state; (2)

---

[1] In Younique's opposition brief, there appeared to be some insinuation that Dr. Youssef was subject to general personal jurisdiction in Utah. (*See* Docket No. 40, at 10) ("There are two different types of personal jurisdiction, either of which is sufficient to defeat Dr. Youssef's motion."). At oral argument, Younique clarified that it asserts only that this court may exercise specific personal jurisdiction over Dr. Youssef. Rightfully so, because the court is not convinced that any argument can be made for general jurisdiction on these facts. The contacts alleged here, whether commercial or directly related to this suit, are infrequent and sporadic at best. They fall far short of the "continuous and systematic" contacts required to establish general jurisdiction. *See generally Helicopteros*, 466 U.S. at 414–17 (finding no general jurisdiction over non-resident defendant).

whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013); *see also Dudnikov*, 514 F.3d at 1071.

The Supreme Court recently clarified the contours of the first inquiry: "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S.Ct. at 1121. The Court focused on two essential attributes of a non-resident defendant's "substantial connection with the forum State." *Id.* at 1121–22. First, the defendant-forum "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State[,]" and not from contacts the plaintiff or third parties have with the forum State. *Id.* at 1122 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985)). Second, the relationship must arise from "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Thus, "the mere fact that [a defendant's] conduct affected [a] plaintiff[] with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126.

In arguing that this court may properly exercise specific personal jurisdiction over Dr. Youssef, Younique first alleges multiple commercial contacts between Dr. Youssef and the State of Utah. Younique alleges that Dr. Youssef traveled to Utah and performed certain "medical services" for visitors at the Sundance Film Festival in 2007, that he has "actively solict[ed] and treat[ed]" Utah residents at his cosmetic surgery practice in California, that he sold "YOUNIQUE"-branded products to Utah residents in California, that he shipped some of those products to Utah after they were purchased in California, and finally, that he operated an online

store that advertised beyond California and could theoretically sell and ship products to Utah. (Docket No. 40, at 1–3). Younique claims that these contacts suffice to ground personal jurisdiction in this instance. *Id.* at 3. In the alternative, Younique points to Dr. Youssef's recent conduct that precipitated this declaratory action, specifically his sending of a cease-and-desist letter to Younique's headquarters in Lehi, Utah. *Id.* Plaintiff argues that this conduct alone is also sufficient to create personal jurisdiction over Dr. Youssef in Utah. *Id.* at 14. In short, Younique argues that Dr. Youssef's commercial contacts, taken together, or the cease-and-desist letter, taken by itself, are sufficient to create specific personal jurisdiction in Utah.  The court will first apply the "minimum contacts" standard to Dr. Youssef's alleged commercial contacts and then to the other alleged contacts.

## I.    Dr. Youssef's Commercial Contacts

Younique first points to Dr. Youssef's alleged commercial contacts with this forum as a sufficient basis for specific jurisdiction. But these contacts with Utah do not ground personal jurisdiction here. Even assuming these contacts were all "purposefully directed" at this forum, the court may not exercise specific personal jurisdiction consonant with due process unless Younique's claim "arise[s] out of" Dr. Youssef's contacts with this forum. *See Burger King*, 471 U.S. at 472 (internal quotations omitted); *Newsome*, 722 F.3d at 1269 ("[T]he specific personal jurisdiction test requires 'the plaintiff's injuries [to] arise out of the defendant's forum-related activities.'" (quoting *Dudnikov*, 514 F.3d at 1076)); *H.A. Folsom & Assocs., Inc. v. Capel*, 2016 WL 4435210 at *5 (D. Utah August 19, 2016) (unpublished) ("Specific jurisdiction grants a court jurisdiction over a party only with respect to a specific dispute."). The Tenth Circuit has not conclusively established a method to determine whether a claim "arise[s] out of" a non-resident defendant's forum-related conduct, but has identified two possible tests that courts may employ.

*Dudnikov*, 514 F.3d at 1078; *Newsome*, 722 F.3d at 1269–70; *Express Services, Inc. v. King*, 2016 WL 3172911 at *9 (D. Utah June 6, 2016) (unpublished). The first is a "but-for" causation test and the second is characterized as a "proximate cause" test. *Dudnikov*, 514 F.3d at 1078.

> Under the former approach, any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction. The latter approach, by contrast, is considerably more restrictive and calls for courts to 'examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim.'

*Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 319 (3d Cir. 2007)). "While the Tenth Circuit has not chosen one over the other, both tests require a 'true causal element[]' between [a] defendant['s] forum contacts and the litigation." *Express Services*, 2016 WL 3172911 at *9 (citing *Newsome*, 722 F.3d at 1269); *see also Shrader*, 633 F.3d at 1246 n.8 (explaining that the Tenth Circuit has rejected "a loose 'substantial connection' test" in favor of an approach that requires a "true causal element" between a defendant's forum contacts and the litigation).

Under either test, the claim for declaratory relief here does not arise out of the commercial contacts alleged by Younique. In other words, Dr. Youssef's alleged commercial contacts with Utah are neither a "but-for" nor a "proximate" cause of Younique's claim. Even assuming Dr. Youssef performed microdermabrasion procedures at Sundance, sold branded products to Utah residents in California, shipped them to the state, treated Utah residents in his California practice, or maintained an online store that perhaps reached out to Utah, those actions did not contribute to or give rise to Younique's declaratory judgment action. In reality, these alleged contacts are wholly unrelated to the merits of Younique's claim. Solely at issue here is Younique's use of its own mark and Dr. Youssef's efforts to cancel the registration of that mark. If the basis of Younique's claim were that its own trademark was violated, then these contacts would surely be

relevant to this court's jurisdictional analysis because Younique's claim of infringement would "arise out of" Dr. Youssef's use of the mark in commerce. *See Ham v. Cienega*, 4 F.3d 413, 146 (5th Cir.) (explaining that defendant's commercial contacts with the forum would be relevant under a "stream of commerce" theory of personal jurisdiction, but were inapposite in a declaratory copyright action). But Younique does not claim that Dr. Youssef's use of the mark to advertise his practice, sell his products, or solicit new clients, whether in or out of Utah, in any way interferes with its own use of the "Younique" mark. In fact, Younique's request for declaratory relief rests on the premise that its use of the registered trademark and Dr. Youssef's use of his service mark are wholly distinct and would not create confusion among customers. (Docket No. 2, ¶¶ 22–33). Accordingly, Younique asks only for a declaration that its use of the "YOUNIQUE PRODUCTS" mark does not infringe on Dr. Youssef's trademark rights and for an injunction against any challenge to its own use of the mark. *Id.*, ¶¶ A–I. Thus, the claim here "arise[s] out of" Dr. Youssef's petition to cancel Younique's trademark, and not out of any use by Dr. Youssef of his "YOUNIQUE" mark to sell products or solicit clients. In sum, Dr. Youssef's commercial contacts with Utah, such as they are, are at best tenuously related to Younique's action for declaratory relief and cannot ground specific personal jurisdiction here. *See Walden*, 134 S.Ct. at 1121 ("For a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." (emphasis added)); *cf. Ham*, 4 F.3d at 416 (holding that defendant's commercial distribution of copyrighted songs in the forum was unrelated to personal jurisdiction in an action where plaintiff sought declaration that he had not violated defendant's copyright); *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1336 (Fed. Cir. 2008) (holding, in the context of patent law, that "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products

[in the forum]—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement"); *Anzures*, 819 F.3d at 1281 (holding that sales made on behalf of defendants in the forum were "not jurisdictionally related to [plaintiff's] tort claims" and therefore could not support a finding of specific personal jurisdiction); *Tomelleri v. MEDL Mobile, Inc.*, —Fed. App'x—, 2016 WL 4142483 at *2–*3 (10th Cir. Aug. 3, 2016) (unpublished) (affirming dismissal for lack of jurisdiction where defendant's forum-related activities were unrelated to plaintiff's claim). The court therefore rejects Plaintiff's assertion of personal jurisdiction based on these commercial contacts.

## II.    Dr. Youssef's Cease-and-Desist Letter

In the alternative, Younique argues that Dr. Youssef's cease-and-desist letter mailed to Younique's headquarters in Utah constitutes a purposeful action that is sufficient to ground specific personal jurisdiction here. To support this argument, Younique cites to *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008). In *Dudnikov*, the Tenth Circuit reviewed a district court's dismissal of a declaratory action for lack of personal jurisdiction. The action was initiated by eBay "power sellers" who sought a declaration that their sale of printed fabrics bearing images that played on famous artworks did not infringe the copyright of the artworks themselves. The copyright owners, alerted to the sellers' auction of the printed fabrics on eBay and intending to cancel the auction, filed a complaint with eBay alleging copyright infringement. Under eBay's internal procedures, the filing of such a complaint triggered an automatic cancellation of the sellers' auction and appended a negative notation of the complaint to their eBay profile. Shortly thereafter, in an email exchange with the sellers, the copyright owners threatened immediate suit for infringement. In response, the sellers filed a

preemptive declaratory action in Colorado. The copyright owners, incorporated in Delaware and based in Connecticut, moved to dismiss for lack of personal jurisdiction, citing insufficient contacts with the forum. The district court granted the motion, holding that there existed neither specific nor general jurisdiction over the defendant copyright owners. On appeal, the Tenth Circuit reversed. The court concluded, *inter alia*, that the copyright owners' filing of a complaint with eBay with the aim to cancel the sellers' auction in Colorado was an intentional act directed at the forum that gave rise to specific personal jurisdiction there. *Dudnikov*, 514 F.3d at 1077–81.

Younique asserts that *Dudnikov* "expressly held that the mailing of [a cease-and-desist] letter is sufficient to justify exercising specific personal jurisdiction." (Docket No. 40, at 14–15). Dr. Youssef counters that *Dudnikov* was decided before the Supreme Court's recent decision in *Walden v. Fiore*, 134 S.Ct. 1115 (2014), and the *Dudnikov* court's reliance on earlier Supreme Court precedent leaves the opinion's authority in doubt. Regardless of *Dudnikov*'s continuing viability after *Walden*, the case does not support Younique's argument.[2]

Despite Younique's assertion to the contrary, *Dudnikov* did not hold that a mailed cease-and-desist letter, alone, is sufficient to ground specific personal jurisdiction in the forum to which the letter is directed. In *Dudnikov*, the court addressed two cases from other circuits, *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998), and *CompuServe v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), both of which involved cease-and-desist letters and threats of litigation mailed to a forum. *Dudnikov*, 514 F.3d at 1079–80 (discussing both cases). But neither case can be read to hold that a mailed cease-and-desist letter alone will ground personal jurisdiction. In fact, the clear import of both cases is that an allegation of infringement directed at a forum cannot, by itself, create personal jurisdiction there. *Red Wing Shoe*, 148 F.3d

---

[2] The court addresses *Dudnikov*'s continuing viability in light of *Walden* below.

at 1360–61 (holding that, although a cease-and-desist letter was an intentional act targeted at the forum, founding personal jurisdiction solely on that basis would be unreasonable under due process principles); *CompuServe*, 89 F.3d at 1266–67 (holding that the defendant purposely availed himself of the forum by marketing his software there through the plaintiff's subscription service *and* by sending threats of litigation to the plaintiff in the forum). Moreover, the Tenth Circuit cited those cases primarily as persuasive support for its own separate conclusion that the sellers' suit "ar[ose] from" the copyright owners' conduct. *See Dudnikov*, 514 F.3d at 1079–80. Most importantly for this case, the court explicitly refused to decide whether founding jurisdiction solely on a cease-and-desist letter would be unreasonable. Instead, the court based its ultimate holding entirely on the copyright owners' complaint to eBay. *See id.* at 1082. The court distinguished "a mere cease-and-desist letter" from the complaint to eBay, noting that the complaint "did more than warn or threaten" the sellers because it caused immediate damage to them in the forum. *See id.* (internal quotations omitted) (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1089 (9th Cir. 2000)). In sum, *Dudnikov* did not hold that the sending of cease-and-desist letter to the forum was sufficient by itself to give rise to specific personal jurisdiction.

Moreover, the court is persuaded that basing personal jurisdiction in a forum solely on a cease-and-desist letter mailed to that forum would "offend traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316 (internal quotations omitted); *Red Wing Shoe*, 148 F.3d at 1360 ("[E]ven though cease-and-desist letters alone are often substantially related to the cause of action (thus providing minimum contacts), the 'minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction.'" (internal alterations omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78,

105 S.Ct. 2174 (1985)). Cease-and-desist letters are an important mechanism for resolution of intellectual property disputes and an intellectual property holder "should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness." *See Red Wing Shoe*, 148 F.3d at 1361 (discussing cease-and-desist letters in the context of patent infringement); *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1208 (9th Cir. 2006) ("If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter."). Accordingly, the court concludes that "[p]rinciples of fair play and substantial justice afford [Dr. Youssef] sufficient latitude to inform others of [his] . . . rights without subjecting [him]self to jurisdiction in a foreign forum." *See Red Wing Shoe*, 148 F.3d at 1361. Thus, this court cannot hold, as Younique requests, that Dr. Youssef's cease-and-desist letter was alone sufficient to subject him to specific personal jurisdiction in this forum.[3]

### III.   Dr. Youssef's Petition to the TTAB

---

[3] The principles articulated in *Walden* also counsel against holding that a cease-and-desist letter, directed at Younique, without more, is sufficient to authorize the exercise of personal jurisdiction over Dr. Youssef. Though the *Walden* Court described "physical entry into the [forum] State . . . through an agent, goods, mail, or some other means" as a "relevant contact" in the jurisdictional analysis, it also emphasized that "the plaintiff cannot be the only link between the defendant and the forum." *See Walden*, 134 S.Ct. at 1122. Thus, while the sending of a cease-and-desist letter to a plaintiff who resides in the forum may be jurisdictionally relevant, the court does not believe it can be the sole basis of jurisdiction unless it has some broader effect on the forum or can be aggregated with other suit-related contacts to demonstrate a "substantial connection" to the forum. *See id.* at 1121; *Fusion Entm't v. Josh Agle, Inc.*, 2008 WL 140489 at *5 (unpublished) ("Courts have held that owning intellectual property rights and sending cease and desist letters into a state in connection with the same are not sufficient to establish a basis for personal jurisdiction. Some additional act of purposeful availment is required of the holder of the intellectual property rights."). The letter here was mailed to Younique alone and was solely focused on Younique's interstate trademark rights. The letter establishes no connection with any person or entity in this forum beyond Younique. Despite the physical passage of the letter into the territorial boundaries of this state, the court fails to see how the letter "connects [Dr. Youssef] to the forum in a *meaningful* way." *See id.* at 1125 (emphasis added).

Finally, the court turns to the only other action by Dr. Youssef that might subject him to specific personal jurisdiction in this forum—the cancellation petition he filed against Younique with the TTAB.[4] Though Younique failed to make any such analogy before oral argument, the court recognizes that, at first blush, Dr. Youssef's cancellation petition seems akin to the complaint filed by the copyright owners in *Dudnikov*. As discussed above, the Tenth Circuit determined that the copyright owners' complaint, though filed with eBay in California, was in reality targeted at Colorado and ultimately had its most injurious effects there: the immediate cancellation of the resident sellers' auction and the marring of their otherwise pristine eBay profile. *Dudnikov*, 514 F.3d at 1075–78. Under the tort-based test of *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), the court held that the filing of the eBay complaint was "performed for the very purpose of having [its] consequence felt in" Colorado, establishing that the copyright owners "purposefully directed" their harmful conduct there. *See id.* at 1077–78 (quoting *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998)). Under a broad interpretation of *Dudnikov*, Younique seems to analogize Dr. Youssef's efforts to cancel Younique's trademark registration by filing a petition with the TTAB in Washington, D.C. to the copyright owners' efforts to cancel the sellers' auction in Colorado by filing a complaint with eBay in California. Dr. Youssef counters that the ongoing viability of the *Calder* "effects" test used in *Dudnikov* is in question after the Court's relatively recent decision in *Walden*. (Docket No. 43, at 8).[5]

---

[4] Younique's submitted materials only obliquely reference Dr. Youssef's petition as a ground for personal jurisdiction. (*See* Docket No. 40, at 4, 15, 17). For the most part, Younique raises the petition to undermine Dr. Youssef's claim that litigating in Utah would be unduly burdensome. *Id.* Younique did, however, explicitly cite the petition as a ground for personal jurisdiction at oral argument.

[5] Dr. Youssef also argues that any act grounding specific personal jurisdiction under *Dudnikov* must be "wrongful" or tortious. The *Dudnikov* court explicitly declined to decide whether this was a necessary showing. *Dudnikov*, 514 F.3d at 1072–73 (describing the split in circuit authority on the wrongfulness requirement: "[W]e are able to avoid entering this thicket.").

As an initial matter, the court disagrees with Dr. Youssef's insinuation that *Calder* is no longer good law after *Walden*. In *Calder*, the Supreme Court held that Florida-based newspapermen were subject to specific personal jurisdiction in California because the libelous article they published was "expressly aimed at California" and caused injury there. *See Calder*, 465 U.S. at 789. The *Walden* Court did not overrule or abrogate the "effects" test that produced this holding, but instead clarified the contours of the "effects" analysis: "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *See Walden*, 134 S.Ct. at 1123–24.

At the same time, the court recognizes that *Walden*'s clarification may significantly narrow otherwise broad readings of *Calder*'s "effects" test. *See, e.g.*, *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) ("[A]fter *Walden* there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum.' Any decision that implies otherwise can no longer be considered authoritative." (citation omitted) (quoting *Walden*, 134 S.Ct. at 1122)); *ClearOne, Inc. v. Revolabs, Inc.*, 369 P.3d 1269, 1278 (Utah 2016) ("[T]o the extent that [the court's previous decision] adopted an interpretation of *Calder* that permitted a plaintiff to be 'the only link between the defendant and the forum,' its interpretation is inconsistent with *Walden*."). In *Walden*, the Court held that a Georgia-based DEA agent could not be subjected to personal jurisdiction in Nevada even though his tortious conduct affected the plaintiffs in that forum. 134 S.Ct. at 1119. After *Walden*, "the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *See id.* at 1126; *Rockwood Select Asset Fund XI(6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong

connection to the forum state."). Instead, a "defendant's suit-related conduct" must have a broader effect on the forum itself—something *beyond* the effect felt by the plaintiff alone. *See Walden*, 134 S.Ct. at 1121–22 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *ClearOne*, 369 P.3d at 1278 (explaining that *Walden* "clarified that the effects of an alleged tort must be felt by more than just a plaintiff with significant contacts with the forum state—they must be felt in some broader sense by the forum state itself"). "To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S.Ct. at 1123. Thus, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125; *Anzures*, 819 F.3d at 1282 ("*Walden* reinforces that personal jurisdiction may not rest solely on the fact that a defendant's conduct affected the plaintiff in the forum state." (citations omitted)). The court believes that these principles foreclose a broad reading of the *Calder* "effects" test and, perhaps, the interpretation of that test announced in *Dudnikov*.[6]

The court need not decide the outer limits of *Dudnikov*'s version of the "effects" test because the court is unconvinced that the case is sufficiently analogous to warrant its application to this case. Specifically, Younique has not alleged any discernible tort-like injury beyond the threat of administrative adjudication.[7] Unlike the plaintiffs in *Dudnikov* whose business in the

---

[6] The court notes that the Tenth Circuit may have already begun the process of narrowing or at least clarifying *Dudnikov*'s interpretation of the "effects" test in *Anzures*, 819 F.3d at 1281–82 (discussing *Dudnikov* and *Calder*).

[7] The court does not assert here that Younique has failed to state a claim, which would conflate the Rule 12(b)(2) and 12(b)(6) analyses. *Newsome*, 722 F.3d at 1270–71 ("[W]e believe it is important to keep the 12(b)(2) and 12(b)(6) analyses distinct."). Instead, the court asserts that the effects-based test employed in *Dudnikov*, rooted in the tort-injury context of *Calder*, seems inapposite with regard to Dr. Youssef's petition to a government agency. Moreover, despite the *Dudnikov* court's refusal to decide whether a purposeful act must be "wrongful" in order to ground personal jurisdiction, *Dudnikov*, 514 F.3d at 1072–73, it seems to this court that the *Dudnikov* copyright owners' deliberate manipulation of the internal procedures of a corporation to disrupt and harm an in-state business is

forum was immediately disrupted as a direct result of the defendant's actions, there is no tangible "injury" to Younique in this forum as a result of Dr. Youssef's petition to the TTAB. While the petition is pending at the TTAB, Younique's trademark remains wholly intact.  Younique has not alleged any current restriction on its ability to use the mark to market or sell its products. Moreover, the TTAB may only cancel Younique's trademark registration after appropriate review and adjudication of each party's rights to their respective marks. *See* 15 U.S.C. § 1068 (explaining that the Director "may cancel the registration . . . [or] modify the registration . . . as the rights of the parties under this chapter may be established in the proceedings"); *id* § 1092 ("If it is found *after a hearing* before the Board that the registrant is not entitled to the registration . . . the registration shall be canceled by the Director." (emphasis added)). In fact, the TTAB may very well decide that Younique's mark does not infringe on Dr. Youssef's rights and deny his petition altogether. This court is not convinced that such a wholly contingent effect, arising from an ostensibly legitimate enforcement action, is analogous to the immediate and likely tortious injury experienced by the Colorado sellers in *Dudnikov. See Dudnikov*, 514 F.3d at 1080 (explaining that the plaintiffs in that case "seek relief not merely from threats, but from *actual restraints* on their business resulting from [the complaint to eBay]" (emphasis added)). Dr. Youssef's submission of a petition to the TTAB seems far more akin to the simple filing of a lawsuit than to tortious extrajudicial enforcement efforts and, without any convincing argument from Younique to the contrary, the court concludes that *Dudnikov* was not meant to encompass Dr. Youssef's conduct.

More crucially, Younique has failed to demonstrate that Dr. Youssef's petition to the TTAB created a "substantial connection" to Utah. *See Walden*, 134 S.Ct. at 1121. Younique

---

qualitatively different from Dr. Youssef's use of proper administrative channels to resolve an ostensibly legitimate trademark dispute.

seems to argue that Dr. Youssef's petition to the TTAB was purposefully directed at this forum because it may have some effect on a company based here. But any deliberate "effect" resulting from the petition is directed at Younique's interstate trademark rights and not at this forum.[8] In fact, the only connection the petition has to this forum is the fact that Younique happens to be headquartered here. The "mere fact that [Dr. Youssef's] conduct affected" Younique in this forum "does not suffice to authorize jurisdiction." *See Walden*, 134 S.Ct. at 1126. To hold that a petition filed in Washington, D.C. grounds personal jurisdiction over Dr. Youssef in this forum simply because Younique is based here would "impermissibly allow[] a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." *Id.* at 1125; *see also Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011) (concluding that "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum"); *Delphix*, 2016 WL 4474631 at *8 (explaining that, in light of *Walden*, the filing of an enforcement action with the TTAB could not ground personal jurisdiction where the target of enforcement resides). The court therefore holds that Dr. Youssef's petition, filed in a separate forum and directed solely at Younique's trademark rights, cannot form the basis of personal jurisdiction in this forum.[9]

---

[8] In the parlance of the "effects" test, Dr. Youssef's petition was not "purposefully directed" at this forum. *See Delphix Corp. v. Embarcadero Tech., Inc.*, 2016 WL 4474631 at *8 (N.D. Cal. Aug. 25, 2016) (unpublished) (holding that the filing of a petition with the TTAB was an intentional act that may have an effect in the forum, but was not "expressly aimed" at the forum and therefore could not ground personal jurisdiction there), *appeal filed*, App. No. 16-16697 (9th Cir. Sept. 23, 2016).

[9] At oral argument, Younique argued that the court should take a "totality of the circumstances" approach to Dr. Youssef's contacts with Utah. In other words, Younique argues that Dr. Youssef's petition to the TTAB, his cease-and-desist letter, and his various commercial contacts with the forum are sufficient to ground specific personal jurisdiction in this forum when taken together as a whole. The court disagrees. As discussed above, Defendant's commercial contacts with Utah are irrelevant to this court's exercise of specific personal jurisdiction in this particular declaratory action. *See Anzures*, 819 F.3d at 1282 ("[The defendant's] sales ties to Colorado are not the subject matter of [the plaintiff's] claims, so they have no place in the jurisdictional calculus."). And, as discussed above, the court is not convinced that the petition to the TTAB is jurisdictionally relevant because it creates no "substantial connection with the forum State." *Walden*, 134 S.Ct. at 1121. But even if the petition is treated as jurisdictionally relevant, the court does not believe that the petition and the letter, even when considered together, ground specific personal jurisdiction in Utah. Put plainly, subjecting Defendant to suit in Utah based on those

## CONCLUSION

Based on the foregoing, the court concludes that Plaintiff Younique, Inc. has failed to demonstrate grounds for this court to exercise personal jurisdiction over Defendant Dr. Youssef in this matter. As a result, this court holds that it lacks proper jurisdiction over this case. The court is required, "if it is in the interest of justice," to cure a want of jurisdiction by transfer "to any other such court in which the action . . . could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; *Trujillo*, 465 F.3d at 1223 ("[A]fter the enactment of § 1631, where the court determines that it lacks jurisdiction and the interests of justice require transfer rather than dismissal, '[t]he correct course . . . [is] to transfer the action pursuant to [§ 1631].'"). Because Younique has not made an alternative request for transfer to an appropriate forum, the court gives Younique leave to submit a request for transfer no later than December 14, 2016. The request should 1) be limited to five (5) pages, 2) identify an appropriate alternative forum, and 3) address why a transfer to that forum would be "in the interest of justice" as that phrase is used in § 1631 and interpreted by the Tenth Circuit. Dr. Youssef may submit a response, if any, to the request for transfer no later than December 21, 2016. The response will also be limited to five (5) pages. Should Younique fail to submit a request for transfer by the date listed above, the case will be dismissed without prejudice.

Signed November 30, 2016.

BY THE COURT

---

contacts would "offend traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316 (internal quotations omitted). It would be patently unreasonable to subject Defendant to suit in a foreign forum based solely on his ostensibly legitimate efforts to enforce a potentially valid claim to a service mark. *Cf. Red Wing Shoe*, 148 F.3d at 1360–61 ("Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement."); *Radio Sys.*, 638 F.3d at 792 (concluding that "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum").

The Honorable Jill N. Parrish
United States District Court Judge